UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICIA A. O'GRADY,

                     Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

**REPORT AND
RECOMMENDATION**

09-CV-1121
(GTS/VEB)

## I. INTRODUCTION

In August of 2006, Plaintiff Patricia O' Grady filed an application for disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she has been unable to work since October of 2005 due to various physical impairments.   The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action on October 6, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB on August 15, 2006, alleging disability beginning on October 16, 2005. (T at 33).[1]  The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 20, 2009, in Canton, New York before ALJ Elizabeth Koennecke. (T at 286).  Plaintiff appeared with her attorney and testified. (T at 294-307).

On May 5, 2009, ALJ Koennecke issued a written decision denying Plaintiff's application for benefits. (T at 12-18).  Plaintiff requested review by the Social Security Appeals Council.  The ALJ's decision became the Commissioner's final decision on August 18, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 5-8).

Plaintiff, through counsel, timely commenced this action on October 6, 2009. (Docket No. 1).  The Commissioner interposed an Answer on January 27, 2010. (Docket No. 9).  Plaintiff filed a supporting Brief on February 1, 2010. (Docket No. 10).  The Commissioner filed a Brief in opposition on May 3, 2010. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

administrative proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ made the following findings: Plaintiff met the insured status requirements under the Social Security Act through December 31, 2011. Plaintiff had not engaged in substantial gainful activity since October 16, 2005, the alleged onset date.  Plaintiff had osteoarthritis of the wrists bilaterally and left-sided cervical radiculopathy, which impairments were "severe" as defined under the Act. (T at 14).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 16).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined under the Social Security Regulations. (T at 16).

At step four of the sequential evaluation process, the ALJ determined that Plaintiff could perform her past relevant work as a clerk/receptionist, with data entry and ordering

of supplies. (T at 18).

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act, from October 16, 2005, the alleged onset date, to May 5, 2009, the date of the ALJ's decision. (T at 18).  As noted above, the ALJ's decision became the Commissioner's final decision on August 18, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 5-8).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers five (5) principal arguments in support of that position.  First, Plaintiff contends that the ALJ did not properly assess the severity of her conditions.  Second, Plaintiff argues that the ALJ did not adequately weigh the opinion of her treating physician.  Third, Plaintiff challenges the ALJ's residual functional capacity assessment.  Fourth, Plaintiff asserts that the ALJ did not properly assess her credibility.  Fifth, Plaintiff contends that the ALJ erred in finding that she was capable of performing her past relevant work.  This Court will address each argument in turn.

### a.    Severity Assessment

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding

6

appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). The Second Circuit has held that the step two severity analysis is limited to "screen[ing] out de minimis claims." <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995). A "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, Plaintiff argues that the ALJ should have found her thoracic outlet syndrome[4] to be a medically determinable and severe impairment. Plaintiff points to the following evidence in support of this argument: In February of 2006, Plaintiff was admitted to Claxton-Nepburn Medical Center for a left first rib resection. Dr. Manuel Palao indicated an impression of "Thoracic outlet syndrome, left." (T at 116-17). Dr. Palao excised Plaintiff's left first rib, made a postoperative diagnosis of thoracic outlet syndrome, and found that Plaintiff's rib was "impinging on vein, artery and nerve." (T at 124).

Notwithstanding Dr. Palao's assessment, the ALJ found there was no clear diagnosis of thoracic outlet syndrome. As such, the ALJ concluded that "a medically

---

[4]Thoracic outlet syndrome is "any of a variety of neurovascular syndromes resulting from compression of the subclavian artery, the brachial plexus nerve trunks, or less often the axillary vein or subclavian vein ... Arterial compression leads to ischemia, paresthesias, numbness, and weakness of the affected arm ... Nerve compression causes atrophy and weakness of the muscles of the hand ..." *Dorland's Illustrated Medical Dictionary* 1873 (31st ed.2007).

determinable impairment [was] not established." (T at 16).

For the following reasons, this Court finds that the the ALJ's conclusion was supported by substantial evidence.  Dr. Robert Johnson examined Plaintiff in July of 2007, reviewed the clinical findings and MRI results, and opined that he was "not at all convinced that [Plaintiff] has thoracic outlet syndrome." (T at 181).  Dr. Johnson also questioned "whether [Plaintiff] had thoracic outlet syndrome prior to her left sided first rib resection." (T at 181).

Dr. Ross Moquin, a neurosurgeon, examined Plaintiff at Dr. Johnson's request, and found it difficult to "comment on the source of [Plaintiff's] symptoms." (T at 186).  Dr. Moquin opined that Plaintiff's symptoms "[c]ertainly" did not appear to be originating from the cervical spine." (T at 186).  Dr. DiGiacco, a neurologist, examined Plaintiff on a consultative basis, and noted a lack of evidence supporting the earlier diagnosis of thoracic outlet syndrome. (T at 172).

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).  Given the questions raised concerning the thoracic outlet syndrome diagnosis by other examining medical sources, this Court will not substitute its judgment for the ALJ's finding that Plaintiff's thoracic outlet syndrome was not a medically determinable impairment.

8

In the alternative, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act (namely, osteoarthritis of the wrists bilaterally and left-sided cervical radiculopathy) and continued with the sequential analysis, any arguable errors in her findings at step two of the analysis were harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

Accordingly, this Court finds no reversible error with regard to the ALJ's step two severity analysis.

b.      **Treating Physician's Rule**

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In this case, Plaintiff's treating physician, Dr. Palao, issued several assessments between October 2005 and September 2006 to the effect that Plaintiff was unable to work. (T at 231-240).  Plaintiff notes that these findings were supported by clinical observations of motion deficits, diminished sensation in her arm, diminished left arm musculature, and

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

diminished reflexes, combined with positive Adson's, Allen's, and Spurling tests. (T at 100-101, 135, 169, 185, 244).  MRI results indicated moderate to large right plesterolateral spur formation at T-3, T-4, with significant encroachment, and bone spur at C5, C6, with encroachment. (T at 97).  Dr. Palao's post-operative findings were that Plaintiff's first rib was impinging on her vein, artery, and nerve. (T at 124).  X-rays of the cervical spine showed moderate degenerative disc disease with diminished disc height at all levels. (T at 179).  In addition, Scott Springstead, Plaintiff's treating chiropractor, completed Workers Compensation forms indicating that Plaintiff was unable to perform regular duties or work. (T at 249-74).

The ALJ declined to afford controlling weight to Dr. Palao's assessment that Plaintiff was unable to work during the time period in question.  In particular, the ALJ characterized Dr. Palao's assessments as "brief essentially conclusory statements." (T at 17).  The ALJ found that the treating physician's statements were not supported by "any significant clinical reporting" and were therefore not entitled to much weight. (T at 17).  Likewise, the ALJ found Mr. Springstead's assessments not adequately supported by clinical or laboratory reporting and, in any event, noted that a chiropractor is not an "acceptable medical source" under the Social Security Act. (T at 17).

This Court finds that the ALJ's decision to discount the findings of Dr. Palao and Mr. Springstead was in accordance with applicable law and supported by substantial evidence. None of Plaintiff's acceptable treating sources provided a functional assessment.   In particular, Dr. Palao did not provide a functional assessment, despite the ALJ's request. (T at 12, 89).   In addition, as noted above, several examining and treating sources questioned Dr. Palao's diagnosis of thoracic outlet syndrome. (T at 172, 181, 186).

The ALJ's decision to discount Dr. Palao's conclusory "unable to work" statements was also supported by the assessments provided by a consultative examiner and State Agency othropedic review consultant.   To wit, Dr. James Naughten conducted a consultative orthopedic examination in October of 2006.   Dr. Naughten found Plaintiff's hand and finger dexterity to be intact, with grip strength 4/5 on the left. (T at 135).   He noted full range of motion of elbows, forearms, wrists, and finger bilaterally, with no muscle atrophy. (T at 135).   Dr. Naughten noted 4/5 left arm strength proximally and distally, with a positive Spurling[6] in the left arm and a minor degree of decreased temperature in the left hand as compared with the right. (T at 135).

Dr. Naughten assessed no limitations with regard to seeing, hearing, talking, sitting, standing, walking, or climbing stairs. He found moderate limitations for pushing, pulling, and reaching with the left arm.   Dr. Naughten opined that Plaintiff should be able to lift, carry, and handle objects with a mild degree of weight on an intermittent basis with her left arm. (T at 136).

D. White, a non-examining State Agency orthopedic consultant, reviewed Plaintiff's medical record and noted that the clinical findings were "non-anatomic and non-physiologic."   White found Plaintiff's credibility "adversely impacted." (T at 138).   The State Agency review consultant's residual functional capacity assessment was consistent with the ALJ's assessment. (T at 138).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining

---

[6]"[A] Spurling's maneuver is a test for cervical radiculopathy performed by placing downwards pressure on the patient's head. The maneuver is positive if it causes pain." Boryk ex rel. Boryk v. Barnhart, 02 CV 2465(JG), 2003 WL 22170596 at 2 n. 4 (E.D.N.Y. Sept. 17, 2003)

and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

Plaintiff essentially invites this Court to examine the clinical findings and test results and make a *de novo* decision to adopt Dr. Palao's assessment that Plaintiff was unable to work during the requisite time period. However, as noted above, it is the Commissioner's responsibility to review the evidence and resolve conflicts. The Commissioner's decision is supported by the findings of a consultative examiner and State Agency review consultant. Moreover, the treating physician failed to provide a functional capacity assessment and several other sources called the treating physician's primary diagnosis into question. Given these facts, this Court will not substitute its judgment for the Commissioner's.

This Court also finds no error with regard to the treatment of the chiropractor's assessment. Chiropractors are not acceptable medical sources under the Commissioner's Regulations and their assessments are not entitled to any special weight. See 20 C.F.R. § 404.1513(a); see also Diaz v. Shalala, 59 F.3d 307, 312-314 (2d Cir.1995). In addition,

the chiropractor's assessments were primarily made in the the Workers' Compensation context, which applies different standards relative to disability determinations than those applied by the Commissioner. See Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y.1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir.1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); see also Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [Plaintiff's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").

For the reasons outlined below, this Court finds that a remand is necessary with respect to the ALJ's assessment of Plaintiff's credibility and her conclusion that Plaintiff could perform her past relevant work.  However, on the narrow question of whether the ALJ properly discounted Dr. Palao's conclusory "unable to work" assessments, this Court finds no reversible error.

### c.   Residual Functional Capacity Assessment

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an

ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ concluded that Plaintiff retained the RFC to perform light work, as defined in 20 CFR § 404.1567 (b), with the ability to lift/carry 20 pounds occasionally and 10 pounds frequently.  The ALJ found that Plaintiff could sit for 6 hours in an 8-hour workday, stand/walk for about 6 hours in an 8-hour workday, occasionally stoop, push, pull, and reach with her left upper extremity.  In addition, the ALJ concluded that Plaintiff could "occasionally handle with the left upper extremity."[7]  (T at 16).

Plaintiff challenges the ALJ's RFC determination, pointing to the assessment of her treating physician and documented difficulties with regard to the use of her left hand.  For the reasons outlined above, this Court finds no error with regard to the ALJ's consideration of the treating physician's assessment.

With respect to the ALJ's consideration of the evidence regarding Plaintiff's ability

---

[7]As discussed below, the ALJ did not provide clarification as to what tasks "handle" referred to (e.g. whether it was meant to include simply grasping objects or more general tasks such as typing or using a computer mouse) or define more precisely what she meant by "left upper extremity."

to use her left hand, the ALJ appears to have incorporated that evidence into her conclusion that Plaintiff was limited to handling objections with her left upper extremity "occasionally." (T at 16).  However, for the reasons outlined below, the ALJ's assessment of Plaintiff's limitations contains material ambiguities concerning, in particular, Plaintiff's ability to use her left hand repetitively.  As discussed further in the following sections, a remand is necessary on this question.  In sum, the ALJ did not adequately address evidence to the effect that Plaintiff experienced tingling and numbness in her left hand, which impaired her ability to use that hand to perform repetitive tasks such as typing.

### d.    Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis

v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the claimant's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the claimant's credibility:

1. [Claimant's] daily activities;
2. The location, duration, frequency and intensity of [Claimant's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Claimant] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Claimant] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Claimant] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Claimant's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the claimant's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No.

17

7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that she experienced numbness in the pinky and ring fingers of her left hand. (T at 296).  She also explained that she has difficulty performing tasks with her left hand that require fine motor skills (e.g. washing her hair). (T at 297). Plaintiff also testified that she has diminished grip strength in her left hand. (T at 303).

This testimony was supported by the medical record, which indicated that Plaintiff experienced tingling and numbness in her left hand and that the symptoms were aggravated by typing. (T at 100).   Dr. Naughten, the consultative examiner, noted decreased sensitivity to pain and touch in Plaintiff's left arm and opined that Plaintiff could handle objects of a mild degree of weight on an "intermittent basis" with her left arm. (T at 135-36).  An examination note indicated decreased muscle bulk in the web space between the thumb and index finger of Plaintiff's left hand. (T at 169).  D. White, the State Agency review consultant, opined that Plaintiff could occasionally "handle" with her left upper extremity. (T at 138).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause only some of the alleged symptoms and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 17).  In particular, the ALJ concluded that Plaintiff's testimony was "not supported by the record and insufficient to rebut the medical opinions of record." (T at 17).  However, the ALJ did not explain what aspects of Plaintiff's testimony he was rejecting on this basis.

The ALJ appears to have credited at least some of the Plaintiff's testimony

18

concerning her limitations.  For example, the ALJ found that Plaintiff could "occasionally handle with the left upper extremity." (T at 16).  Presumably, this limitation was based upon Plaintiff's testimony concerning tingling and numbness in her left hand and the medical evidence supporting that testimony.  However, this is not clear from the ALJ's decision.  This lack of clarity raises several questions.

For example, did the ALJ reject Plaintiff's testimony that she experienced tingling and numbness in her left hand (and that typing and other fine motor activities aggravated the symptoms)?  If so, what was intended by the ALJ's finding that Plaintiff could only "handle" with her "left upper extremity" occasionally?  Does "handle" include fine motor activities such as typing, filing papers, and using a computer mouse?

Moreover, what "medical opinions" of record supported the decision to discount Plaintiff's testimony regarding the repetitive use of her left hand?  As noted above, the evidence appears to support Plaintiff's testimony.  Moreover, the consultative examiner and State Agency review consultant both noted limitations with regard to frequent use of the left upper extremity (which would seem to include a limitation with regard to activities like typing and filing of papers, which require repetitive use of the hands) and an examination indicated muscle atrophy in the left hand. (T at 135-36, 138,169).

On the other hand, if the ALJ *accepted* Plaintiff's testimony that she experienced tingling and numbness in her left hand (and that fine motor activities aggravated the condition), what was the nature, extent, and scope of the limitation?  If the ALJ's finding that Plaintiff could "occasionally handle with the left upper extremity" was meant to apply to the use of her left hand, how does that limitation affect Plaintiff's ability to use a computer keyboard, mouse, telephone, or file papers?  In turn, how is that limitation reconciled with

19

the ALJ's finding that Plaintiff was able to perform her past relevant work?

These questions cannot be answered by the ALJ's decision.  A remand is therefore required.  On remand, the ALJ must re-evaluate Plaintiff's credibility and make explicit findings concerning Plaintiff's ability to use her left hand - particularly with regard to using that hand for repetitive, fine motor activities such as typing.  The ALJ should also give explicit consideration to Plaintiff's excellent work record (T at 39) when assessing her credibility. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

### e.    Past Relevant Work

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and

20

mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles* ["DOT"], etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

In this case, the ALJ found that Plaintiff could perform her past relevant work as a clerk/receptionist, with data entry and ordering of supplies. (T at 18).  Citing descriptions from the DOT, the ALJ noted that the "job did not require overhead lifting or working on her left side . . . ." (T at 18).

The ALJ's finding cannot be sustained.  As outlined above, Plaintiff testified to significant symptoms in her left hand, which were aggravated by fine motor activities such as typing.  The medical record contains support for Plaintiff's testimony.  The ALJ's finding that Plaintiff could "handle" with her "left upper extremity" only "occasionally" at least arguably suggests that the ALJ afforded some credit to Plaintiff's allegations.  However, the ALJ did not reconcile this limitation with her finding that Plaintiff could perform her past relevant work.[8]

Moreover, the ALJ's statement that Plaintiff's past relevant work did not require Plaintiff to work "on her left side" is rather curious, at best, and is contrary to the DOT descriptions cited by the ALJ in support of her decision.  Among the duties set forth in DOT #203.582-054 for a data entry clerk are: "Operates keyboard or other data entry device to enter data into computer or onto magnetic tape or disk for subsequent entry: Enters

---

[8]In the alternative, if the ALJ did not accept Plaintiff's testimony, she did not provide an adequate explanation or justification for the decision to discount this aspect of the testimony.

alphabetic, numeric, or symbolic data from source documents into computer, using data entry device, such as keyboard or optical scanner . . . ." It is difficult to envision how a person could effectively perform these tasks without "working on her left side," as assessed by the ALJ. The duties of a receptionist, as outlined in DOT #237.367-038, may include: "[O]perate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents." Again, the ALJ has provided no indication as to how Plaintiff is to perform these duties satisfactorily without "working on her left side."

Plaintiff's statements concerning her past relevant work also indicated that the work involved repetitive use of the hands. (T at 47, 68, 296). The ALJ's determination that Plaintiff could perform her past relevant work implies a finding that Plaintiff retained the ability to use her left hand repetitively to perform fine motor tasks throughout the work day. The ALJ has not articulated an adequate basis to sustain that conclusion and the record evidence does not appear to support such a finding.

Accordingly, the ALJ's conclusion that Plaintiff could perform her past relevant work must be revisited on remand, with further development of the record and discussion concerning the nature, extent, and scope of Plaintiff's limitation concerning the repetitive use of her left hand.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper

disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is respectfully recommended that this case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion be denied, the decision of the Commissioner be reversed, and this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.


Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge

Dated:    July 5, 2011

          Syracuse, New York

### V. ORDERS


Pursuant to 28 USC §636(b)(1), it is hereby  ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 5, 2011

Victor E. Bianchini
United States Magistrate Judge

24